UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
AMERICAN PETROLEUM                      )
  INSTITUTE,                            )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     Civil Action No. 02-2247   (PLF)
                                        )
STEPHEN L. JOHNSON,                     )
  Administrator, United States          )
  Environmental Protection Agency, *et al.,* )
                                        )
          Defendants.                   )
_____)
                                        )
MARATHON OIL COMPANY,                   )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     Civil Action No. 02-2254   (PLF)
                                        )
STEPHEN L. JOHNSON,                     )
  Administrator, United States          )
  Environmental Protection Agency, *et al.,* )
                                        )
          Defendants.                   )
_____)


## OPINION

          This matter is before the Court on plaintiffs' two motions for summary judgment

and defendant's and defendant-intervenors' (collectively, "defendants") three cross-motions for

summary judgment in two consolidated cases: American Petroleum Institute v. Johnson, Civil

Action No. 02-2247, and Marathon Oil Co. v. Johnson, Civil Action No. 02-2254.[1]  Plaintiffs

_____

          [1]     The papers submitted in connection with these motions include: Motion of
Plaintiff American Petroleum Institute for Summary Judgment ("API Mot."); Plaintiff API's

bring suit under the Clean Water Act ("the Act"), 33 U.S.C. §§ 1251 *et seq.*, the Administrative

Procedure Act, 5 U.S.C. §§ 551 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

Plaintiff American Petroleum Institute ("API") is a non-profit, nationwide trade association

representing nearly 400 companies engaged in the petroleum and natural gas industry.  Plaintiff

Marathon Oil Company is a for-profit company that, among other things, refines, markets, and

transports petroleum products.  Marathon is a member of API.

Plaintiffs challenge the substantive and procedural validity of a new regulation

promulgated by the Environmental Protection Agency.  Plaintiffs contend that (1) EPA's new

regulation includes an impermissibly broad definition of the statutory term "navigable waters,"

which definition (according to plaintiffs) purports to extend EPA's regulatory authority beyond

the limits established by the Clean Water Act and Congress' Commerce Clause authority, and

---

Combined (1) Memorandum in Opposition to EPA's and Intervenors' Cross-Motions for
Summary Judgment and (2) Reply Memorandum in Support of Plaintiff API's Motion for
Summary Judgment ("API Opp. and Reply"); Motion of Plaintiff Marathon Oil Company for
Summary Judgment ("Marathon Mot."); Plaintiff Marathon Oil Company's Corrected Combined
(1) Reply in Further Support of Its Motion for Summary Judgment and (2) Opposition to EPA's
and Intervenors' Cross-Motions for Summary Judgment ("Marathon Opp. and Reply"); Plaintiff
Marathon Oil Company's Response to Notice of Supplemental Authority; EPA's Memorandum
in Opposition to Plaintiffs' Motions for Summary Judgment and in Support of EPA's Cross-
Motion for Summary Judgment ("EPA Mot."); EPA's Reply Memorandum in Support of EPA's
Cross-Motion for Summary Judgment ("EPA Reply"); EPA's Notice of Supplemental Authority;
Intervenor-Defendant State of New York's Opposition to Plaintiffs' Motions for Summary
Judgment and Cross-Motion for Summary Judgment; Intervenor-Defendant New York's Reply
Memorandum in Support of New York and Defendant EPA's Cross-Motions for Summary
Judgment; Environmental Intervenors' Cross-Motion for Summary Judgment ("Environmental
Intervenors Mot."); Environmental Intervenors' Memorandum (1) Opposing Plaintiffs' Motion
for Summary Judgment, and (2) Supporting Environmental Intervenors' Cross-Motion for
Summary Judgment ("Environmental Intervenors Opp."); Environmental Intervenors' Reply in
Support of Cross-Motion for Summary Judgment ("Environmental Intervenors Reply"); and
Environmental Intervenors' Response to EPA's and Marathon's Notices of Supplemental
Authority.

(2) EPA failed to offer a rational explanation for its new definition of "navigable waters," rendering it arbitrary and capricious under the APA.[2]  Because the Court concludes that EPA's promulgation of the new definition of "navigable waters" violated the APA, it does not reach plaintiffs' statutory or constitutional claims.

## I.  PROCEDURAL HISTORY

API and Marathon filed these lawsuits on November 14, 2002.  The Court permitted the Natural Resources Defense Council and the Sierra Club (collectively, the "Environmental Intervenors") and the State of New York to intervene as defendants on November 13, 2003.

In January and February 2006, the United States Supreme Court heard oral argument in Rapanos v. United States, No. 04-1034, and Carabell v. Army Corps of Engineers, No. 04-1834 (collectively, "Rapanos").  Those consolidated cases addressed the meaning and scope of the term "navigable waters" as used in the Clean Water Act.  Because that issue is of considerable significance to these cases, this Court ordered these cases stayed pending the Supreme Court's decision.  This Court also denied the parties' pending cross-motions for summary judgment without prejudice to their being refiled after that decision.  The Supreme Court issued its decision on June 19, 2006.  See Rapanos v. United States, 547 U.S. 715 (2006).  This Court then lifted the stay in these consolidated cases, and the parties filed the motions now before it.  The Court heard oral argument on these motions on February 4, 2008.

---

[2]      The parties have settled several other claims in these cases related to the regulation at issue.  See API Mot. at 2.  Only the claims discussed herein remain.

## II.  BACKGROUND

### A.  The Clean Water Act

The purpose of the Clean Water Act is to "restore and maintain the physical, biological and chemical integrity of the Nation's waters."  Clean Water Act § 101(a), 33 U.S.C. § 1251(a).  In pursuit of this goal, and subject to certain exceptions, the Act prohibits the "discharge of any pollutant."  Id. § 301(a), 33 U.S.C. § 1311(a).  A "pollutant" is defined as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."  Id. § 502(6), 33 U.S.C. § 1362(6).  "Discharge of a pollutant" means "any addition of any pollutant to *navigable waters* . . . ."  Id. § 502(12), 33 U.S.C. § 1362(12) (emphasis added).  Thus, the Clean Water Act protects only those waters that are "navigable waters" for purposes of the Act, and administrative agencies charged with enforcing the Act – primarily the EPA and the Army Corps of Engineers – may exert regulatory authority only over such "navigable waters."  Section 502(7) of the Act defines "navigable waters" to mean "the waters of the United States, including the territorial seas."  Id. § 502(7), 33 U.S.C. § 1362(7).

### B.  The Challenged Definition

Section 311(j) of the Clean Water Act, in relevant part, authorizes the President, through the EPA, to "issue regulations . . . establishing procedures, methods, and equipment and other requirements for equipment to prevent discharges of oil and hazardous substances from vessels and from onshore and offshore facilities [into navigable waters of the United States], and

to contain such discharges."  Clean Water Act § 311(j)(1)(C), 33 U.S.C. § 1321(j)(1)(C).  In

1973, EPA promulgated a regulation pursuant to its Section 311(j) authority which, among other

things, required oil-producing facilities that could reasonably be expected to discharge oil into

navigable waters to develop spill prevention, control and counter-measure ("SPCC") plans.  See

Non-Transportation Related Onshore and Offshore Facilities, 38 Fed. Reg. 34,164 (Dec. 11,

1973) ("1973 SPCC Rule").[3]  The 1973 SPCC Rule included a regulatory definition of the

statutory term "navigable waters."  The purpose of this definition was to clarify which waters –

and thus, which oil-producing facilities near such waters – were subject to EPA's regulatory

authority under Section 311(j).  The 1973 SPCC Rule defined "navigable waters" as follows:

> The term "navigable waters" of the United States means "navigable
> waters" as defined in Section 502(7) of the [Clean Water Act], and
> includes:
>
> (1) all navigable waters of the United States, as defined in judicial
> decisions prior to passage of the 1972 Amendments of the [Clean
> Water Act] and tributaries of such waters;
>
> (2) interstate waters;
>
> (3) intrastate lakes, rivers, and streams which are utilized by
> interstate travelers for recreational or other purposes; and
>
> (4) intrastate lakes, rivers, and streams from which fish or shellfish
> are taken and sold in interstate commerce.

1973 SPCC Rule, 38 Fed. Reg. at 34,165.

EPA proposed substantial revisions to the 1973 SPCC Rule in 1991; it largely

adopted those revisions in 2002.  See Oil Pollution Prevention & Response; Non-Transportation-

---

[3]     As their name implies, SPCC plans are intended to reduce the likelihood of an oil
spill and, in the event of a spill, to reduce its environmental impact.

Related Onshore & Offshore Facilities, 67 Fed. Reg. 47,042 (July 17, 2002), codified at 40

C.F.R. § 112 ("2002 SPCC Rule").  Like the 1973 SPCC Rule, the 2002 SPCC Rule includes a

regulatory definition of the statutory term "navigable waters."  That definition provides:

> Navigable waters means the waters of the United States, including the territorial seas.
>
> (1) The term includes:
>
> (i) All waters that are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters subject to the ebb and flow of the tide;
>
> (ii) All interstate waters, including interstate wetlands;
>
> (iii) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation, or destruction of which could affect interstate or foreign commerce including any such waters:
>
> > (A) That are or could be used by interstate or foreign travelers for recreational or other purposes; or
> >
> > (B) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or,
> >
> > (C) That are or could be used for industrial purposes by industries in interstate commerce;
>
> (iv) All impoundments of waters otherwise defined as waters of the United States under this section;
>
> (v) Tributaries of waters identified in paragraphs (1)(i) through (iv) of this definition;
>
> (vi) The territorial sea; and
>
> (vii) Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraph (1) of this definition.

2002 SPCC Rule, 40 C.F.R. § 112.2(1).

API and Marathon argue that EPA violated the APA by failing to provide a rational explanation for this new definition – and in particular the expansive breadth of regulatory authority contemplated by the new definition – in view of the limits on Clean Water Act jurisdiction imposed by the Commerce Clause and by the Clean Water Act itself.  In response, EPA argues that its explanation is short but sufficiently clear and rational to satisfy the APA's requirement of reasoned decisionmaking.  The Environmental Intervenors argue that plaintiffs lack standing to challenge the new regulatory definition of "navigable waters," and that, even if they have standing, their claims are not ripe.  As discussed below, the Court concludes that plaintiffs have standing, that plaintiffs' claims are ripe, and that EPA violated the APA by failing to provide a sufficiently clear, cogent and reasoned explanation for its decision to promulgate such a broad definition of "navigable waters."

III.  DISCUSSION

The Court begins by addressing the two threshold issues: (1) whether plaintiffs have standing to challenge EPA's new regulatory definition of "navigable waters," and (2) whether plaintiffs' claims are ripe.

*A.  Standing*

API and Marathon maintain that they are injured by EPA's new regulatory definition of "navigable waters" because it appears to cover more waters (and thus appears to impose regulatory burdens on more oil-producing facilities near such waters) than the previous definition.  See API Compl. at 4; Marathon Compl. at 4.  According to Marathon, the breadth of EPA's new regulatory definition of "navigable waters" will require the company to spend

7

"millions of dollars" to comply with the 2002 SPCC Rule.  Marathon Mot. at 5.  As a result,

plaintiffs assert that they are put to "the classic Hobson's choice of submitting to costly

regulation or paying enforcement penalties."  P & V Enterprises v. Army Corps of Engr's, No.

07-5060, 2008 WL 425523, at *2 (D.C. Cir. Feb. 19, 2008) (internal quotation marks and citation

omitted).  See API Compl. at 3; Marathon Compl. at 3.[4]  API and Marathon further argue that the

new definition causes them injury because it has compelled them to develop SPCC plans at

additional facilities that were not previously subject to the SPCC rules, and which may not be

subject to Clean Water Act jurisdiction.  See API Opp. and Reply at 25; Marathon Opp. and

Reply at 31 (arguing that "EPA's limitless definition of 'navigable waters' forces Marathon to

prepare SPCC Plans for facilities that can reasonably be expected to discharge oil into *any* area

that falls under this definition, even if EPA ultimately has no jurisdiction over the area");

Marathon Opp. and Reply at 31 (as a result of the new definition, "Marathon has had to be over-

inclusive in its preparation of SPCC Plans").  Finally, API and Marathon argue that a ruling in

their favor would redress their injuries because vacating the definition would eliminate the need

to bring additional facilities into compliance with EPA's SPCC rules.  See id. at 31-32.

EPA does not dispute that plaintiffs have standing to challenge the new regulatory

definition of "navigable waters."  The Environmental Intervenors, however, contend that

plaintiffs do not have standing.  They offer three arguments on this score.  First, the

Environmental Intervenors maintain that plaintiffs have not established standing because the

declarations plaintiffs submitted in support of their standing suffer from certain evidentiary and

---

[4]      Parties who fail to comply with regulations issued under Section 311(j) are subject
to substantial civil penalties.  See Clean Water Act § 311(b)(6), 33 U.S.C. § 1321(b)(6).

pleading flaws, namely: (1) the declarants, who have only "general degrees in science," are not

competent to offer opinions about navigability or the likelihood of pollution from specific

facilities, and their declarations are based on "legally incorrect assumptions about the traditional

navigability test"; and (2) the declaration of Dr. Junyang C. Yang is based on hearsay.  See

Environmental Intervenors Mot. at 14-16.  In addition, the Environmental Intervenors argue that

plaintiffs have failed to establish standing to challenge certain subsections of the new regulatory

definition – specifically, subsections (iv) and (vii) – because plaintiffs' declarations do not allege

any harm from those subsections.  According to the Environmental Intervenors:

> The declarations [in support of plaintiffs' standing] make no claim
> or showing that plaintiffs or their members have facilities that will
> be subject to the SPCC program due to the potential of those
> facilities to spill to impoundments [as prohibited by subsection (iv)
> of the new regulatory definition of "navigable waters"] or wetlands
> adjacent to covered waters [as prohibited by subsection (vii) of the
> new regulatory definition of "navigable waters"].  The types of
> waters cited in the declarations are creeks, draws, arroyos, ponds,
> and rivers – not impoundments or adjacent wetlands.

Id. at 16.

Second, the Environmental Intervenors argue that plaintiffs have failed to show

that their injuries are caused by the new regulatory definition of "navigable waters."  The

Environmental Intervenors argue as follows: The new regulatory definition of navigable waters

replaced a previous definition of navigable waters.  The previous definition – in the

Environmental Intervenors' view – was sufficiently broad to permit EPA to assert regulatory

jurisdiction over all of the waters (and hence all of the oil-producing facilities near such waters)

that API and Marathon claim would not be subject to EPA's regulatory jurisdiction but for the

new definition of "navigable waters" in the 2002 SPCC Rule.  Thus, the Environmental

Intervenors argue, because the facilities identified by plaintiffs as the situs of their injuries were "already covered under the predecessor definition [of "navigable waters,"] then plaintiffs cannot claim injury [traceable to] promulgation of the [new definition of "navigable waters" in the 2002 SPCC Rule]."  Environmental Intervenors Mot. at 7-9.

Third, the Environmental Intervenors argue that plaintiffs do not have standing because a ruling in plaintiffs' favor would not redress their purported injuries.  According to the Environmental Intervenors, plaintiffs' claims lack redressability because even if this Court were to vacate the new regulatory definition of "navigable waters" in the 2002 SPCC Rule, the effect of such a vacatur would be to restore the previous definition of "navigable waters" – which, again, the Environmental Intervenors argue was sufficiently broad to permit EPA to assert regulatory jurisdiction over all of the facilities that plaintiffs identify as the situs of their injuries. See Environmental Intervenors Mot. at 11, 13.[5]

---

[5]    The Environmental Intervenors also argue that plaintiffs' claims lack redressability because, even if this Court were to vacate the new regulatory definition of "navigable waters," an unchallenged portion of the 2002 SPCC Rule would provide an alternative basis on which to assert regulatory jurisdiction over plaintiffs' facilities.  That portion of the 2002 SPCC Rule purports to extend EPA's regulatory jurisdiction beyond discharges to navigable waters and adjoining shorelines to include discharges "that may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States." 2002 SPCC Rule, 40 C.F.R. § 112.1(b).

This argument does not defeat plaintiffs' standing because plaintiffs maintain – quite plausibly – that at least some of their facilities are *not* located on federal land or likely to discharge oil or hazardous substances in a way that would affect federal resources.  See Marathon Opp. and Reply at 33; id., Ex. 5, Declaration of Mr. Al Learned at 5 ("Most of Marathon's facilities in Oklahoma are located on private lands.").

1. Challenges to Plaintiffs' Declarations

*a. "Evidentiary" Challenges*

The Environmental Intervenors' attacks on the evidentiary sufficiency of plaintiffs' declarations fail for two reasons.  First, plaintiffs' declarants need not be experts in hydrology nor have a sophisticated legal understanding of "navigability" in order to demonstrate plaintiffs' injuries for purposes of standing, because plaintiffs need not prove the merits of their case in order to establish standing.  See, e.g., Warth v. Seldin, 422 U.S. 490, 500 (1975) (standing is a threshold inquiry that "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"); American Library Ass'n v. FCC, 406 F.3d 689, 696 (D.C. Cir. 2005); American Library Ass'n v. FCC, 401 F.3d 489, 493 (D.C. Cir. 2005); Sierra Club v. EPA, 292 F.3d 895, 899-900 (D.C. Cir. 2000).  Plaintiffs need only set forth, by affidavit, declaration or other permissible means, "specific facts" (which for purposes of summary judgment will be taken as true) demonstrating that a genuine issue of material fact exists as to whether they have been injured in a way that supports standing.  FED. R. CIV. P. 56(e)(2); see Sierra Club v. EPA, 292 F.3d at 899.  Plaintiffs' declarations set forth such "specific facts."  Second, plaintiffs have addressed any hearsay objections to the declarants' statements by submitting revised declarations that do not rely on hearsay.  See Marathon Opp. and Reply, Ex. 3, Declaration of Dr. Junyang C. Yang; id., Ex. 5, Declaration of Mr. Al Learned; id., Ex. 6, Declaration of Mr. Vijay Kurki.

### b.  "Pleading" Challenges

The Court is not persuaded that plaintiffs have forfeited their challenges to subsections (iv) and (vii) merely because plaintiffs' declarants failed to identify specific "impoundments" and "adjacent wetlands" giving rise to plaintiffs' injuries.  While it is true that one *could* read plaintiffs' declarations as omitting any mention of or reference to waters that are properly categorized as "impoundments" or "adjacent wetlands," it is also highly likely that many of the waters mentioned in plaintiffs' declarations could be labeled in various ways, and that the character of some of the waters mentioned in plaintiffs' declarations changes over time.  Rather than reject a substantial part of plaintiffs' claims for hypertechnical reasons, the Court concludes that plaintiffs' challenges to subsections (iv) and (vii) are not barred merely because plaintiffs' declarants failed to use the magic words "impoundment" and "adjacent wetland."

### 2.  Substantive Challenges to Plaintiffs' Standing

### a.  Standing Requirements

Article III standing requires individual plaintiffs to show, at an "irreducible constitutional minimum": (1) that they have suffered an injury in fact; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that a favorable decision on the merits likely will redress the injury.  See Friends of the Earth v. Laidlaw, 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); Gettman v. DEA, 290 F.3d 430, 433 (D.C. Cir. 2002).  The alleged injury must be concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative.  See Friends of the Earth v. Laidlaw, 528 U.S. at 180-81; Lujan v. Defenders of Wildlife, 504 U.S. at 560-61.

An association like API may have standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).[6]

In addition to Article III's standing requirements, parties bringing suit under the APA must establish the "prudential" elements of standing. This is not particularly difficult to do. See Shays v. FEC, 414 F.3d 76, 83 (D.C. Cir. 2005). Plaintiffs must show that their claims fall "arguably within the zone of interests to be protected or regulated by the statute in question." Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488 (1998) (internal quotation marks omitted); see also Amgen, Inc. v. Smith, 357 F.3d 103, 108 (D.C. Cir. 2004).

*b. Have Plaintiffs Established the Elements of Prudential Standing?*

Plaintiffs argue that, as parties subject to the 2002 SPCC Rule, their interests are indisputably within the zone of interests to be regulated by Section 311(j) and regulations issued pursuant to EPA's Section 311(j) authority. See API Mot. at 34; Marathon Mot. at 7. EPA and the Environmental Intervenors do not dispute this proposition, nor could they. The Court therefore concludes that plaintiffs have prudential standing to challenge the new definition.

---

[6]     No party disputes that API meets the latter two requirements.

*c.  Have Plaintiffs Established the Elements of Constitutional Standing?*

As the Supreme Court has explained, plaintiffs are typically presumed to have

constitutional standing when, as here, they are directly regulated by a rule:

> When the suit is one challenging the legality of government action
> or inaction, the nature and extent of facts that must be averred (at
> the summary judgment stage) or proved (at the trial stage) in order
> to establish standing depends considerably upon whether the
> plaintiff is himself an object of the action (or forgone action) at
> issue.  *If he is, there is ordinarily little question that the action or
> inaction has caused him injury, and that a judgment preventing or
> requiring the action will redress it.*

Lujan v. Defenders of Wildlife, 504 U.S. at 561-62 (emphasis added).  Similarly, the D.C. Circuit

has suggested that standing is usually self-evident when the plaintiff is a regulated party or an

organization representing regulated parties.  For example, it has concluded that an association of

oil refineries had standing to challenge an EPA regulation establishing air pollution standards

because it was "inconceivable" that the regulation "would fail to affect . . . even a single"

member of the association.  South Coast Air Quality Mgmt. Dist. v. EPA, 472 F.3d 882, 895-96

(D.C. Cir. 2006); see also Fund for Animals, Inc. v. Norton, 322 F.3d 728, 733-34 (D.C. Cir.

2003).

Plaintiffs' declarations are sufficient to establish the elements of constitutional

standing under these principles.  With respect to the requirement of "injury in fact," no party

denies that EPA's regulatory definition of "navigable waters" directly influences the business

decisions of Marathon and API's other members.  See EPA's Response to Plaintiff API's

Statement of Material Facts ¶ 62; EPA's Response to Plaintiff Marathon's Statement of Material

Facts ¶ 55; Environmental Intervenors' Response to API's Statement of Material Facts at 3

14

(claiming lack of sufficient knowledge to deny or affirm this point); Environmental Intervenors'

Response to Marathon's Statement of Material Facts (failing to dispute this point).  Regulatory

influences on a firm's business decisions may confer standing when, as here, they give rise to

cognizable economic injuries or even a "sufficient likelihood" of such injuries.  Clinton v. City

of New York, 524 U.S. 417, 432-33 (1998).  See also Sabre, Inc. v. Dep't of Transp., 429 F.3d

1113, 1119 (D.C. Cir. 2005) (firm established standing to challenge regulation where it was

"reasonably certain that [the firm's] business decisions [would] be affected" by the regulation).

As explained by a leading treatise:

> The [Supreme] Court routinely recognizes probable economic
> injury resulting from agency actions that alter competitive
> conditions as sufficient to satisfy the [Article III "injury-in-fact"
> requirement] . . . .  It follows logically that any . . . petitioner who
> is likely to suffer economic injury as a result of agency action
> satisfies this part of the standing test.

3 RICHARD PIERCE, ADMINISTRATIVE LAW TREATISE § 16.4 at 1122 (4th ed. 2002).  Cf. Shays v.

FEC, 414 F.3d at 87 ("[W]hen regulations illegally structure a competitive environment –

whether an agency proceeding, *a market*, or a reelection race – parties defending concrete

interests . . . in that environment suffer legal harm under Article III.") (emphasis added).

Because plaintiffs are directly regulated by the 2002 SPCC Rule, and because plaintiffs'

declarations establish that the regulatory definition of "navigable waters" included in the 2002

SPCC Rule influences their business decisions such that they have incurred and likely will incur

substantial costs as a result of the new definition, those declarations are sufficient to establish

that plaintiffs have been "injured" for purposes of the standing analysis.

API and Marathon have also established that their injuries are caused by the new definition and redressable by a ruling in their favor.  Plaintiffs have asserted that they would not incur the costs of developing SPCC plans at certain facilities "but for" the new definition – that is, but for what they perceive to be an expansion of the scope of EPA's regulatory jurisdiction as a result of the new definition.  Plaintiffs' injuries therefore are "fairly traceable" to the new definition.  Lujan v. Defenders of Wildlife, 504 U.S. at 560.  Moreover, as plaintiffs identify as the source of their injuries the *expansion* of regulatory authority effected by the new regulatory definition, it follows that plaintiffs' business decisions would not be affected in the same way as they are now even if the new definition was vacated and its predecessor was restored.  Thus, it seems "likely, as opposed to merely speculative, that [plaintiffs'] injury will be redressed by a favorable decision."  Id. (internal quotation marks and citations omitted).  See also Center For Energy & Econ. Dev. v. EPA, 398 F.3d 653, 657 (D.C. Cir. 2005) ("Where an agency rule causes the injury, . . . the redressability requirement may be satisfied by vacating the challenged rule.").  Plaintiffs therefore have satisfied all of the elements of constitutional standing.

### B.  Ripeness

The Environmental Intervenors also challenge this Court's jurisdiction on ripeness grounds.  See Environmental Intervenors Reply at 10.

The ripeness doctrine "limits the power of federal courts in adjudicating disputes.  Its roots are found in both the Article III requirement of 'case or controversy' and prudential considerations favoring the orderly conduct of the administrative and judicial processes."  State Farm Mut. Auto. Ins. Co. v. Dole, 802 F.2d 474, 479 (D.C. Cir. 1986).  In the context of

administrative action, the doctrine prevents courts through premature adjudication "from entangling themselves in abstract disagreements over administrative policies," and it "protects agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967).

When considering a ripeness challenge, a court must consider both (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding judicial review. See Abbott Laboratories v. Gardner, 387 U.S. at 149; Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engr's, 417 F.3d 1272, 1281 (D.C. Cir. 2005). A dispute is generally fit for judicial review if it is legal in nature and no other institutional concerns militate in favor of withholding review. See Better Gov't Ass'n v. Dep't of State, 780 F.2d 86, 92 (D.C. Cir. 1986). Under the "hardship prong," a court must consider the plaintiff's interests in securing immediate review. See Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 164-65 (1967).

Here, the central issue – whether EPA violated the procedural requirements of the APA – is purely legal and hence presumptively reviewable. Moreover, plaintiffs have considerable interests in immediate review. Without such review, plaintiffs will have to choose between spending money to develop what they regard as unnecessary SPCC plans or face possible sanctions. As the Supreme Court has noted:

> Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts . . . must be permitted, absent a statutory bar or some other unusual circumstance . . . .

Abbott Laboratories v. Gardner, 387 U.S. at 153.  See also Ciba-Geigy Corp. v. EPA, 801 F.2d

430, 434-35 (D.C. Cir. 1986) (courts consider both fitness for judicial review and hardship to the

parties that would result from withholding judicial consideration; when plaintiffs face the choice

of compliance or sanctions, courts should resolve close questions of ripeness in favor of

plaintiffs).  The Court concludes that plaintiffs' APA claims are ripe.

C.  APA Claims

1.  Plaintiffs' Arguments

API and Marathon argue that the new regulatory definition of "navigable waters"

in the 2002 SPCC Rule should be set aside under Sections 553(c), 706(2)(A) and 706(2)(D) of

the APA because it was promulgated without a rational explanation – and hence arbitrarily,

capriciously, and without observance of procedure required by law.  See, e.g., API Mot. at

11-14.[7]  As discussed more fully below, the argument essentially is that EPA's explanation failed

to address "highly relevant recent decisions of the Supreme Court and the lower federal courts

[bearing on the meaning of the term 'navigable waters']" and reached a conclusion at odds with

those decisions.  API Mot. at 9.  Thus, plaintiffs argue that the explanation either is not "based on

---

[7]        Section 553(c) provides that, after providing notice of a rulemaking and allowing
interested parties to participate in the rulemaking, "the agency shall incorporate in the rules
adopted a concise general statement of their basis and purpose."  5 U.S.C. § 553(c).

        Section 706(2)(A) provides that the reviewing court shall "hold unlawful and set
aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

        Section 706(2)(D) provides that the reviewing court shall "hold unlawful and set
aside agency action, findings, and conclusions found to be . . . without observance of procedure
required by law."  5 U.S.C. § 706(2)(D).

18

a consideration of the relevant factors" or indicates "a clear error of judgment," <u>Motor Vehicle</u>

<u>Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983), and therefore the new

definition must be vacated.  <u>See</u> API Mot. at 9, 11-16.

What the parties refer to as EPA's "explanation" for the new regulatory definition

actually appears as a response by the agency to a comment in the 2002 SPCC Rule's statement of

"basis and purpose."  That comment argues that "the definition [of 'navigable waters' included in

the 2002 SPCC Rule is] legally unsupportable because it is so broad."  The gist of the comment

seems to be that EPA's new regulatory definition conflicts with recent case law defining the term

"navigable waters" – and, perhaps, with the language of the statute and its legislative history as

well.  EPA responded:

> Navigable waters are not only waters on which a craft may be
> sailed.  Navigable waters include all waters with a past, present, or
> possible future use in interstate or foreign commerce, including all
> waters subject to the ebb and flow of the tide.  Navigable waters
> also include intrastate waters which could affect interstate or
> foreign commerce. *The case law supports a broad definition of
> navigable waters, such as the one published today, and that
> definition does not necessarily depend on navigability in fact.*

2002 SPCC Rule, 67 Fed. Reg. at 47,075 (emphasis added).  API and Marathon argue that, in

light of recent Supreme Court case law, this explanation is too terse, too conclusory and probably

wrong as a matter of law.  Therefore, say plaintiffs, the explanation demonstrates that the agency

did not engage in a course of reasoned decisionmaking when defining the scope of its regulatory

jurisdiction.

Plaintiffs' argument is based largely on the decision and the reasoning of the

Supreme Court in <u>Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engr's</u>, 531

U.S. 159 (2001) ("SWANCC"), a case decided over a year before EPA promulgated its new

regulatory definition of "navigable waters."  In SWANCC, the Supreme Court reaffirmed its

view that the Clean Water Act was intended to regulate both (1) traditional navigable waters and

(2) "at least some waters that would not be deemed 'navigable' under the classical understanding

of that term."  Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engr's, 531 U.S.

at 167 (quoting United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 133 (1985)).[8]

   Without determining precisely which waters fell within the second category, the

Supreme Court concluded that the waters at issue in SWANCC – ponds that were non-navigable,

intrastate and isolated (that is, not adjacent to open water) – were not "navigable waters" for

purposes of the Clean Water Act, even though those ponds were arguably connected to interstate

commerce because they were occasionally used by migratory birds.  See Solid Waste Agency of

N. Cook County v. U.S. Army Corps of Engr's, 531 U.S. at 168.  The Court contrasted those

ponds with the "wetlands adjacent to navigable waters" at issue in Riverside Bayview Homes,

which were "inseparably bound up with the 'waters' of the United States."  Solid Waste Agency

of N. Cook County v. U.S. Army Corps of Engr's, 531 U.S. at 167 (quoting and citing United

States v. Riverside Bayview Homes, Inc., 474 U.S. at 134-39).  Those ponds, said the Supreme

Court, had no "significant nexus" with traditional navigable waters, while the wetlands that

actually abutted a navigable waterway in Riverside Bayview Homes did.  See Solid Waste

Agency of N. Cook County v. U.S. Army Corps of Engr's, 531 U.S. at 167-68.  This distinction

was important because, the Court reasoned, Congress did not intend to assert regulatory

_____

  [8] Traditional navigable waters are those waters that are (or have been) navigable-in-fact or that reasonably could be so made.  See The Daniel Ball, 10 Wall. 557, 563 (1871); see also Rapanos v. United States, 547 U.S. at 723-24.

jurisdiction to the full extent of its Commerce Clause power when it enacted the Clean Water

Act; it intended to exert nothing more "than its commerce power over navigation" – that is, its

authority to regulate commerce by regulating the nation's "navigable waters." Id. at 168 n.3; see

also id. at 172 (observing that Congress' use of the term "navigable" in the Clean Water Act "has

at least the import of showing us what Congress had in mind as its authority for enacting the

CWA: its traditional jurisdiction over waters that were or had been navigable in fact or which

could reasonably be so made").[9]

API and Marathon argue that EPA's new regulatory definition of "navigable

waters" is – at the very least – in considerable tension with the decision and reasoning of

SWANCC. For example, as plaintiffs note, subsection (iii) of EPA's new regulatory definition

purports to assert EPA's authority over

---

[9]      As noted *supra* at 3, the Supreme Court even more recently discussed the scope of the term "navigable waters" in Rapanos v. United States, 547 U.S. 715 (2006). In Rapanos, Justice Scalia, writing for a plurality, interpreted the Clean Water Act to require "the ordinary presence of water" to support regulatory jurisdiction. Id. at 731-35. Justice Scalia concluded that only (1) traditional navigable waters and other "relatively permanent, standing or continuously flowing [bodies] of water connected to traditional interstate navigable waters" and (2) wetlands with a continuous surface connection to such waters are subject to Clean Water Act jurisdiction. Id. at 732, 739, 742. The broader interpretation proffered by the Army Corps of Engineers in that case, wrote Justice Scalia, "stretche[d] the outer limits of Congress's commerce power and raise[d] difficult questions about the ultimate scope of that power." Id. at 738. Justice Kennedy, concurring, took a slightly more generous view, arguing that all that is required to support Clean Water Act jurisdiction is a "significant nexus between the wetlands [or other waters] in question and navigable waters in the traditional sense." Id. at 779 (Kennedy, J., concurring).

        It is not entirely clear whether Justice Scalia's test or Justice Kennedy's test now establishes the outer limits of Clean Water Act jurisdiction. See Amanda Bronstad, Wetlands Protection Muddied by Court Rulings, THE NATIONAL LAW JOURNAL at 1 (June 25, 2007). Fortunately, this Court need not resolve that difficult issue, as the instant case requires the Court to answer a much narrower question: whether EPA's explanation of its new regulatory definition of "navigable waters" is adequate in light of SWANCC and other cases of which EPA was aware when it promulgated the 2002 SPCC Rule.

> *[a]ll* other waters such as intrastate lakes, rivers, streams
> (including intermittent streams), mudflats, sandflats, wetlands,
> sloughs, prairie potholes, wet meadows, playa lakes, or natural
> ponds, the use, degradation, or destruction of which *could* affect
> interstate or foreign commerce . . .

2002 SPCC Rule, 40 C.F.R. § 112.2(1)(iii) (emphasis added).  In plaintiffs' view, this subsection

extends EPA's regulatory jurisdiction to the outer limits of the Commerce Clause – and perhaps

beyond those limits.  See API Mot. at 34; Marathon Mot. at 9-18.  See also Heather Keith, United

States v. Rapanos: Is "Waters of the United States" Necessary for Clean Water Act Jurisdiction?,

3 SETON HALL CIRCUIT REV. 565, 581 (Spring 2007) (observing that EPA's definition of

"navigable waters" is "as broad as possible under the Commerce Clause").  That is problematic

because SWANCC (and now Rapanos) plainly rejected such an expansive view of Clean Water

Act jurisdiction.  See API Opp. and Reply at 2-4.

      Plaintiffs contend that, in promulgating a new regulatory definition of "navigable

waters" that appears to extend EPA's regulatory authority to the outer limits of the Commerce

Clause, EPA was obligated – at the very least – to address the tension between its new definition

and the decision and reasoning of the Supreme Court in SWANCC.  See, e.g., API Opp. and

Reply at 3.[10]  The fact that EPA did not do so convinces plaintiffs that EPA either ignored or

---

     [10]    Plaintiffs maintain that EPA should have considered other post-SWANCC
decisions as well, such as Rice v. Harken Exploration Co., 250 F.3d 264 (5th Cir. 2001); United
States v. Newdunn, 195 F. Supp. 2d 751 (E.D. Va. 2002), rev'd, 344 F.3d 407 (4th Cir. 2003);
United States v. Rapanos, 190 F. Supp. 2d 1011 (E.D. Mich. 2002), rev'd, 339 F.3d 447 (6th Cir.
2003); and United States v. Needham, No. 01-1897, 2002 WL 1162790 (W.D. La. Jan. 23,
2003), rev'd on other grounds, 354 F.3d 340 (5th Cir. 2003).

     The Environmental Intervenors contend that plaintiffs have waived any argument
that EPA was obligated to address SWANCC and other relevant cases because plaintiffs did not
make this argument during the rulemaking proceedings.  See Environmental Intervenors Mot. at
6, 36-37.  As plaintiffs point out, however, "EPA retain[ed] a duty to examine key assumptions

failed to appreciate the meaning of <u>SWANCC</u>.  <u>See</u> API Mot. at 12-16.  In other words, API and

Marathon maintain that EPA's explanation is either not "based on a consideration of the relevant

factors" or indicates "a clear error of judgment."  <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut.</u>

<u>Auto. Ins. Co.</u>, 463 U.S. at 43.  Therefore, in their view, the new regulatory definition of

"navigable waters" cannot be regarded as a product of reasoned decisionmaking and must be set

aside.  The Court agrees.


2.  Standard of Review

Judicial review of EPA's new regulatory definition of "navigable waters" and the

procedures by which it was promulgated is governed by Section 706 of the Administrative

Procedure Act.  Under Section 706, a reviewing court may set aside agency actions, findings, or

conclusions when they are arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law.  <u>See</u> 5 U.S.C. § 706(2)(A); <u>Marsh v. Oregon Natural Resources</u>

<u>Council</u>, 490 U.S. 360, 375 (1989).  A court may also set aside agency action taken "without

observance of procedure required by law."  5 U.S.C. § 706(2)(D).  In reviewing the agency's

actions, the Court considers whether the agency acted within the scope of its legal authority,

whether the agency has explained its decision, whether the facts on which the agency purports to

have relied have some basis in the record, and whether the agency considered all relevant factors.

---

[of the new definition] as part of its affirmative burden of promulgating and explaining a
nonarbitrary, noncapricious rule . . . even if no one object[ed] to [those assumptions] during the
comment period."  <u>Appalachian Power Co. v. EPA</u>, 135 F.3d 791, 818 (D.C. Cir. 1998) (internal
quotation marks and citation omitted).  For reasons discussed below, the Court concludes that
EPA could not fulfill this duty without at least considering the implications of <u>SWANCC</u> and
explaining its definition of "navigable waters" in light of <u>SWANCC</u>.  Thus, plaintiffs' failure to
make this argument during the comment period is not fatal to the instant challenge.  <u>See</u>
Marathon Opp. and Reply at 35.

Marsh v. Oregon Natural Resources Council, 490 U.S. at 378; Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971).

### 3.  Analysis

The APA requires agencies to "incorporate in the rules adopted a concise general statement of their basis and purpose."  5 U.S.C. § 553(c).  "[T]his requirement is not meant to be particularly onerous."  Nat'l Mining Ass'n v. Mine Safety and Health Admin., 512 F.3d 696, 700 (D.C. Cir. 2008).  Nevertheless,

> the agency must examine the relevant data and articulate a
> satisfactory explanation for its action including a rational
> connection between the facts found and the choice made. . . .  In
> reviewing that explanation, [the Court] must consider whether the
> decision was based on a consideration of the relevant factors and
> whether there has been a clear error of judgment.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 (internal quotation marks and citations omitted).  See also Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6 (D.C. Cir. 2006); United States Telecom Ass'n v. FCC, 227 F.3d 450, 460 (D.C. Cir. 2000) ("It is well-established that 'an agency must cogently explain why it has exercised its discretion in a given manner,' and that explanation must be 'sufficient to enable us to conclude that the [agency's action] was the product of reasoned decisionmaking'") (internal quotation marks omitted) (quoting A.L. Pharma, Inc. v. Shalala, 62 F.3d 1484, 1491 (D.C. Cir. 1995)).  This requirement includes an obligation to explain a decision to depart from a "settled course of behavior."  Int'l Ladies' Garment Workers' Union v. Donovan, 722 F.2d 795, 813-15 (D.C. Cir. 1983); see also Nuvio Corp. v. FCC, 473 F.3d 302, 308 (D.C. Cir. 2006).

In this case, EPA justified the new regulatory definition of "navigable waters" by stating that "[t]he case law supports a broad definition of navigable waters, such as the one published today." 2002 SPCC Rule, 67 Fed. Reg at 47,075.  EPA's explanation and conclusion are deficient in two respects.  First, it is all but impossible for this Court to determine whether EPA's explanation is the result of reasoned decisionmaking because, although EPA's conclusion necessarily comprehends several complex legal issues – including the meaning of the statutory term "navigable waters," the scope of Clean Water Act jurisdiction, and the limits imposed on Clean Water Act jurisdiction by the Commerce Clause – EPA offers no indication of which cases it relied upon or how it derived support for its broad definition from those cases.  As a result, the Court is left to speculate as to how EPA reached the conclusion that its new, broader regulatory definition is "supported by the case law."  And of course, "[i]t will not do for a court to be compelled to guess at the theory underlying the agency's action."  SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947); see also Connecticut Dep't of Public Utility Control v. FERC, 484 F.3d 558, 560 (D.C. Cir. 2007).  That is why "[t]he basis for an administrative decision . . . must be clear enough to permit effective judicial review."  Int'l Longshoremen's Ass'n v. Nat'l Mediation Bd., 870 F.2d 733, 735 (D.C. Cir. 1989); see also American Lung Ass'n v. EPA, 134 F.3d 388, 392 (D.C. Cir. 1998) ("With its delicate balance of thorough record scrutiny and deference to agency expertise, judicial review [of agency action] can occur only when agencies explain their decisions with precision.").  EPA's explanation does not meet this standard.

To be clear, the Court is not suggesting that agencies are required to write law review articles (or judicial opinions) justifying their authority each time they promulgate a rule.  See, e.g., Personal Watercraft Indus. Ass'n v. Dep't of Commerce, 48 F.3d 540, 545 (D.C. Cir.

1995) (emphasizing that, under Section 553(c) of the APA, agencies need only describe the "basis" and "purpose" of their regulations in a "concise" and "general" way).  But the circumstances here were peculiar, and they imposed a peculiar burden – if not a unique burden – on the EPA.  As EPA knows, the scope of Clean Water Act jurisdiction has had a long and complicated history, and much of that history has involved definitions of "navigable waters" analogous to or similar to EPA's new definition.  EPA's explanation ignores this history, even though its new regulatory definition of "navigable waters" is – at best – in tension with much of it.  Moreover, EPA did not assert that its new definition was merely *permitted* by the case law, but rather that it was *supported* by the case law.  Surely by invoking "the case law" as a justification for the new definition, EPA obligated itself to provide at least a cursory explanation of its theory.  Finally, EPA has itself acknowledged – both before and after promulgation of the new definition – that <u>SWANCC</u> was a "significant new ruling by the Supreme Court pertaining to the scope of regulatory jurisdiction under the Clean Water Act."  <u>See</u> API Mot., Ex. 8, Memorandum from EPA General Counsel Gary S. Guzy at 1 (Jan. 19, 2001).  That acknowledgment undercuts the assertions of EPA's lawyers in this case that <u>SWANCC</u> was not significant enough to merit discussion in the agency's explanation of the new regulatory definition of "navigable waters."  <u>See</u>, <u>e.g.</u>, EPA Mot. at 59-60.

Second, it is extremely difficult to square EPA's conclusion – that is, that the case law supports a definition of "navigable waters" as broad as the one included in the 2002 SPCC Rule – with the decision and reasoning of the Supreme Court in <u>SWANCC</u>.  While <u>SWANCC</u> may not have established hard-and-fast rules for determining which waters qualify as "navigable waters," it did establish that Clean Water Act jurisdiction is not co-extensive with Congress'

26

Commerce Clause authority.  See Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engr's, 531 U.S. at 168 n.3; see also Rapanos v. United States, 547 U.S. at 738.  EPA's new regulatory definition, however, appears to assume that Clean Water Act jurisdiction *does* extend to the outer boundaries of Congress' Commerce Clause power.  This is particularly true in the case of subsection (iii) – and by necessary implication subsections (iv) and (v) –  which extends EPA's authority to "[a]ll . . . waters . . . which could affect interstate or foreign commerce . . . ."[11] And the same assumption is all but explicit in EPA's explanation of the new definition, which simply assumes – with no analysis or qualification – that the case law supports such a far-reaching definition of "navigable waters."

This assumption that appears to animate EPA's new regulatory definition is consistent with earlier interpretations of Clean Water Act jurisdiction.  See, e.g., United States v. Earth Sciences, Inc., 599 F.2d 368, 375 (10th Cir. 1979) ("It seems clear Congress intended to

---

[11]     Speaking of language in the Army Corps of Engineers' regulatory definition of "navigable waters" that was identical to subsection (iii) of EPA's new regulatory definition of "navigable waters," the Fourth Circuit said:

> This [section of the Corps' definition of "navigable waters"] purports to extend the coverage of the Clean Water Act to a variety of waters that are intrastate, nonnavigable, or both, solely on the basis that the use, degradation, or destruction of such waters *could* affect interstate commerce.  The regulation requires neither that the regulated activity have a *substantial* effect on interstate commerce [as required by United States v. Lopez, 514 U.S. 549 (1995)], nor that the covered waters have any sort of nexus with navigable, or even interstate, waters.  Were this regulation a statute, duly enacted by Congress, it would present serious constitutional difficulties, because, at least at first blush, it would appear to exceed congressional authority under the Commerce Clause.

United States v. Wilson, 133 F.3d 251, 257 (4th Cir. 1997) (discussing 33 C.F.R. § 328.3).

regulate discharges made into every creek, stream, river or body of water that in any way may affect interstate commerce.  Every court to discuss the issue has used a commerce power approach and agreed upon that interpretation.").  But this theory of Clean Water Act jurisdiction did not survive SWANCC.  See Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engr's, 531 U.S. at 168 n.3; see also Rice v. Harken Exploration Co., 250 F.3d at 268; EPA Mot. at 43 (conceding that "[t]he CWA does not permit regulation to the full extent permitted under the Commerce Clause").  The prominence of this assumption in EPA's definition and explanation therefore establishes to a near certainty that the agency failed to consider or failed to come to grips with key factors – namely, SWANCC and cases interpreting SWANCC – when formulating its new definition of "navigable waters."  This the APA will not tolerate.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 (noting that an agency must "examine the relevant data" and base its decision "on a consideration of the relevant factors").

In sum, the Court concludes that EPA's explanation (1) is too conclusory to permit this Court to evaluate its rationality, and (2) impermissibly fails to address (let alone justify) the disconnect between its conclusion and the decision and reasoning of the Supreme Court in SWANCC.  The Court therefore cannot conclude that the agency engaged in a course of reasoned decisionmaking.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 (courts may "uphold a decision of less than ideal clarity *if the agency's path may reasonably be discerned*") (internal quotation marks and citations omitted) (emphasis added).  As this Court "may not supply a reasoned basis for the agency's action that the agency itself has not given," id. (internal quotation marks and citations omitted), EPA's new regulatory definition of

"navigable waters" must be regarded as arbitrary and capricious.

EPA has three main arguments in response.  First, EPA argues that no further explanation was necessary because the new definition merely "changed the description of geographical features that EPA listed as . . . 'waters of the United States,' [and] this was not considered a 'major revision' to the definitions in the SPCC Rule."  EPA Mot. at 57.   Second, EPA argues that it was not required to provide further analysis because its explanation was intended to "encompass[] a long history of court decisions . . . upholding similar definitions of 'navigable waters' in other regulations."  Id. at 59.   Third and finally, EPA argues that it was reasonable not to address SWANCC in its explanation of the new definition because "SWANCC was decided after the preparation of the final draft rule, which had first been proposed more than ten years earlier."  See id. at 59-60.[12]

None of these arguments is persuasive.  The first fails because EPA cannot seriously maintain that the differences between the new definition and its predecessor are merely cosmetic.  EPA substantially revised its definition, and so was obligated to explain its reasons for doing so.  See, e.g., Shays v. FEC, 337 F. Supp. 2d 28, 86 (D.D.C. 2004), aff'd, 414 F.3d 76 (D.C. Cir. 2005).  The second fails because it asks this Court to rely on counsel's post hoc explanations of the agency's behavior and simply ignores the case law contrary to EPA's position.  See, e.g., City of Brookings Municipal Telephone Co. v. FCC, 822 F.2d 1153, 1165

_____

[12]      EPA also argues that it was not required to address SWANCC because SWANCC did not facially strike down any part of the Corps' analogous definition of "navigable waters," nor did it have the far-reaching significance alleged by plaintiffs.  See EPA Mot. at 59.  This is essentially an argument that SWANCC and cases interpreting SWANCC were not important enough to require discussion (or even acknowledgement) in EPA's explanation of its new definition.  The Court already has explained why it disagrees with that view.  See supra at 23-28.

(D.C. Cir. 1987) ("*Post hoc* rationalizations advanced to remedy inadequacies in the agency's record or its explanation are bootless."). The third argument, frankly, is silly. The fact that the proposed rule had been on the shelf for ten years is no excuse for failing to consider a directly relevant decision of the Supreme Court decided before the final rule was promulgated. EPA had ample time – over a year – to grapple with the implications of SWANCC.

## IV.  REMEDY

### A.  Remand, Vacatur, Or Both?

Plaintiffs ask this Court to vacate EPA's new regulatory definition of "navigable waters" and remand to the agency, "instructing EPA to propose and submit for public comment a regulation that conforms to Rapanos and fits within the bounds of the CWA." Marathon Mot. at 7; see also API Mot. at 16. EPA argues that the proper remedy for the APA violations discussed above is to remand to the agency for further consideration and explanation consistent with this Opinion without vacating the new definition. See, e.g., EPA Reply at 42. The Court agrees with EPA that it is within the Court's discretion to remand without vacating the new regulatory definition, but it declines to do so.

While an agency's failure to set forth a reasoned explanation requires a reviewing court to remand to the agency for further consideration, see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 57, such a defect does not necessarily require vacatur. See, e.g., Advocates for Highway and Auto Safety v. Federal Motor Carrier Safety Admin., 429 F.3d 1136, 1151 (D.C. Cir. 2005) ("While unsupported agency action normally warrants vacatur, . . . this court is not without discretion [to remand without vacating]."); Allied-Signal, Inc. v.

Nuclear Regulatory Comm'n, 988 F.2d 146, 150 (D.C. Cir. 1993) ("An inadequately supported rule . . . need not necessarily be vacated.").  The decision whether to vacate hinges on "the seriousness of the [regulation's] deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences" of vacatur.  Int'l Union, United Mine Workers of America v. Federal Mine Safety and Health Admin., 920 F.2d at 967.

      The Court concludes that both factors militate in favor of vacating the new regulatory definition of "navigable waters" *and* remanding to the agency.  First, as discussed above, the deficiencies in EPA's explanation strongly suggest that the agency failed to engage in reasoned decisionmaking.  Thus, the Court has significant doubts as to "whether the agency chose correctly" in formulating its new regulatory definition of "navigable waters."  Int'l Union, United Mine Workers of America v. Federal Mine Safety and Health Admin., 920 F.2d at 967.  Second, EPA has not persuaded this Court that there is "'a serious possibility'" that the agency would be able to offer an adequate explanation for the new definition on remand.  Milk Train, Inc. v. Veneman, 310 F.3d 747, 756 (D.C. Cir. 2002) (quoting Allied-Signal, Inc. v. Nuclear Regulatory Comm'n, 988 F.2d at 151).  Finally, vacatur will not be disruptive in this case because, after many extensions and delays, the 2002 SPCC Rule is now scheduled to go into effect no earlier than July 1, 2009.  See 72 Fed. Reg. 27,443 (May 16, 2007) (final rule extending compliance dates for the 2002 SPCC Rule).  The Court will vacate the new regulatory definition of "navigable waters" and remand these cases to the agency for further proceedings consistent with this Opinion.

*B. Effect of Vacatur*

Plaintiffs argue that vacatur of the new regulatory definition of "navigable waters" does not restore the previous definition of "navigable waters" included in the 1973 SPCC Rule because (1) EPA "reopened" the issue of the meaning of "navigable waters" by proposing to revise its SPCC rules in 1991, and (2) "the pre-2002 definition (as interpreted by the Agency) would itself run afoul of <u>SWANCC</u> and <u>Rapanos</u>."  API Mot. at 17.  Thus, plaintiffs argue that to vacate the new regulatory definition is to condemn the previous definition as well, and to require EPA to rely on the bare terms of the statute to assert its Section 311(j) jurisdiction during the pendency of any further agency proceedings.  Defendants respond that the agency's rulemaking proceedings did not "reopen" the previous definition of "navigable waters" – the definition in the 1973 SPCC Rule – such that plaintiffs may challenge that definition as well.  In defendants' view, vacatur will merely "return[] the parties to the *status quo ante*" – that is, it will merely restore the previous regulatory definition of "navigable waters" pending further proceedings.  <u>See</u> EPA Mot. at 63-64.

Defendants have the better of the argument.  First, as defendants point out, plaintiffs' complaints do not even hint that they are challenging the previous definition of "navigable waters," and for good reason – any such challenge would be time-barred.  <u>See</u> 28 U.S.C. § 2401(a) (establishing six-year statute of limitation for civil claims against the United States).  Nor do plaintiffs' papers address the lawfulness of the previous definition except in passing.  Under such circumstances, plaintiffs cannot characterize their suits as challenges to both the new definition of "navigable waters" and the definition of "navigable waters" contained in the earlier 1973 SPCC Rule, because plaintiffs did not give defendants "fair notice" of a

challenge to the earlier definition.  See Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000);

see also Vaughn v. City of Lebanon, 18 Fed. App'x 252, 272 (6th Cir. 2001) ("Courts have

routinely refused to consider claims that were not properly raised in a complaint or

amendment/supplement to the complaint.").

   Second, the Court rejects plaintiffs' invocation of the "reopening" doctrine to tie

the fate of the previous definition of "navigable waters" to that of the new regulatory definition.

As the D.C. Circuit has explained, "[t]he reopening doctrine allows an otherwise stale challenge

[to a regulation] to proceed because the agency opened the issue up anew [during a subsequent

rulemaking proceeding], and then reexamined . . . and reaffirmed its [prior] decision."  P & V

Enterprises v. Army Corps of Engr's, 2008 WL 425523 at *2 (internal quotation marks and

citation omitted).  The purposes of the reopening doctrine is to ensure that "when the agency . . .

by some new promulgation creates the opportunity for renewed comment and objection [on a

regulation that could not be challenged otherwise because of the passage of time], affected

parties may seek judicial review, even when the agency decides not to amend" that regulation.

Id. at *2 (internal quotation marks and citation omitted).

   The reopening doctrine does not permit plaintiffs to challenge the previous

definition of "navigable waters" for two reasons.  First, as noted above, even assuming that

plaintiffs *could* seek judicial review of the previous definition of "navigable waters" on the

theory that EPA reopened the 1973 SPCC Rule by initiating rulemaking proceedings in 1991,

plaintiffs failed to do so.  See *supra* at 32.  Second, and more substantively, the reopening

doctrine permits parties to pursue otherwise stale challenges to regulations when "an agency's

actions show that it has not merely republished an existing rule . . . but has reconsidered the rule

33

*and decided to keep it in effect*."  Public Citizen v. Nuclear Regulatory Comm'n, 901 F.2d 147,

150 (D.C. Cir. 1990) (emphasis added).  In other words, the reopening doctrine permits parties to

obtain judicial review of an otherwise unchallengeable agency decision by allowing parties to

challenge the agency's later decision to reaffirm the earlier decision.  See 2 RICHARD PIERCE,

ADMINISTRATIVE LAW TREATISE § 11.7 at 828 (4th ed. 2002).  But of course, EPA did not

reconsider and reaffirm its previous definition of "navigable waters"; rather, it decided to

abandon the previous definition of "navigable waters" and promulgate a new – and much

different – definition.[13]  Thus, what plaintiffs seek to do is to challenge EPA's previous definition

of "navigable waters" on the basis of EPA's decision *not* to reaffirm that definition.  That is not

what the reopening doctrine contemplates, and API and Marathon point to no authority for the

proposition that an agency's decision to reject an otherwise unchallengeable regulation renders

that regulation subject to judicial review.

   The Court concludes that EPA did not render the previous definition of "navigable

waters" subject to judicial review by promulgating a wholly different definition of "navigable

waters," and that even if it did, plaintiffs' claims cannot be construed as claims against both the

current and the previous definition of "navigable waters."  The previous definition of "navigable

waters" included in the 1973 SPCC Rule therefore is restored pending further rulemaking or

---

[13]  Indeed, plaintiffs' entire standing theory depends on the idea that there are major
differences between the previous definition of "navigable waters" and the new definition adopted
as part of the 2002 SPCC Rule.  See *supra* at 7-8, 12-16; see also API Compl. ¶ 15 (arguing that
the new definition of "navigable waters" is "significantly more expansive than the pre-existing
definition"); Marathon Compl. ¶ 13 (same).

other appropriate agency action, and in the interim EPA may assert its Section 311(j) authority on the basis of the 1973 SPCC Rule's definition of "navigable waters."[14]

## V.  POSTSCRIPT: PLAINTIFFS' STATUTORY CLAIMS

As noted *supra* at 2, API and Marathon argue that the new regulatory definition of "navigable waters" is inconsistent with the Clean Water Act.  Specifically, plaintiffs argue that the new definition purports to extend EPA's jurisdiction over waters that Congress did not intend to regulate when it limited the scope of the Clean Water Act to "navigable waters," defined as "the waters of the United States, including the territorial seas."  Clean Water Act § 502(7).  See API Mot. at 17-33; Marathon Mot. at 9-14.  The Court need not address these claims to resolve the case, because it has concluded that the new regulatory definition of "navigable waters" must be vacated on procedural grounds under the APA.  Still, a brief word about plaintiffs' statutory claims is in order.

Both in their papers and at oral argument, plaintiffs contended that the Court should decide whether EPA's new regulatory definition – which, of course, is an interpretation of a statutory term – is consistent with the Clean Water Act under the familiar two-step test set forth in Chevron USA, Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).  See, e.g., Marathon Opp. and Reply at 8-13.  EPA argued that this Court should instead apply the "no set of circumstances" test of Reno v. Flores, 507 U.S. 292, 310 (1991) (observing that plaintiffs

---

[14]      Nor will the Court grant plaintiffs' request for an order directing EPA to engage in further rulemaking.  To do so would be to usurp the agency's policymaking prerogative.  See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. at 416.  The Court notes, however, that any further proceedings the agency chooses to initiate must take into account not only the issues raised in this Opinion but also events that occurred after promulgation of the 2002 SPCC Rule, including the Supreme Court's Rapanos decision and cases interpreting Rapanos.

bringing a facial challenge to an agency regulation – whether on constitutional or statutory

grounds – "must establish that no set of circumstances exists under which the [regulation] would

be valid") (internal quotation marks and citations omitted), or the similar "some set of

circumstances" test of INS v. Nat'l Center for Immigrants' Rights, 502 U.S. 183, 188 (1991)

(observing that just because a "regulation may be invalid as applied in [some] cases . . . does not

mean that the regulation is facially invalid because it is without statutory authority").  See EPA

Mot. at 23-26 (citing Amfac Resorts, LLC v. U.S. Dep't of the Interior, 282 F.3d 818 (D.C. Cir.

2002), *vacated in part on other grounds sub nom.* Nat'l Park Hospitality Ass'n v. Dep't of

Interior, 538 U.S. 803 (2003)).

As Judge Henry Kennedy has noted, there is a good deal of confusion in this

Circuit and elsewhere as to when courts should apply Reno v. Flores or INS v. Nat'l Center for

Immigrants' Rights, rather than Chevron, when plaintiffs challenge regulations on their face.  See

Mineral Policy Center v. Norton, 292 F. Supp. 2d 30, 38-41 (D.D.C. 2003).  The Court's

independent research confirms Judge Kennedy's diagnosis.  See, e.g., Nat'l Mining Authority v.

Kempthorne, No. 06-5199, 2008 WL 123836, at *3 (D.C. Cir. Jan. 15, 2008) (applying

Chevron); Exxon Mobil Corp. v. FERC, 501 F.3d 204, 211 (D.C. Cir. 2007) (applying a test akin

to Reno v. Flores and INS v. Nat'l Center for Immigrants' Rights without citing either case).

While it has no occasion to reach the question in this case, the Court agrees with

Judge Kennedy that various factors – including "the uneven application of the no-set-of-

circumstances test, the confusion surrounding the doctrine, and [this Court's] own view that

Chevron is adequately deferential to the decisions of administrative agencies" – all counsel in

favor of evaluating facial challenges to regulations on statutory grounds under Chevron.  Mineral

<u>Policy Center v. Norton</u>, 292 F. Supp. 2d at 40.  That approach seems especially sound when, as here, plaintiffs challenge a regulation that embodies an agency's interpretation of statutory language.  In any event, that is the course this Court will follow until the Supreme Court or the D.C. Circuit provides further clarification on this issue.

  An Order consistent with this Opinion will be issued this same day.

  SO ORDERED.

      /s/_____
      PAUL L. FRIEDMAN
      United States District Judge

DATE: March 31, 2008